**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:07-CV-02236 AHM | Date | November 10, 2009 |
|---|---|---|---|
| Title | BRANDON RUIZ V. KAREN KELLY, *et al.* | | |

Present: The Honorable   A. HOWARD MATZ, U.S. DISTRICT JUDGE

| S. Eagle | N/A | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:          Attorneys **NOT** Present for Defendants:

**Proceedings:**          (IN CHAMBERS)

## I.   INTRODUCTION

On October 17, 2007 Plaintiff Brandon Ruiz ("Plaintiff") filed a complaint against the following six defendants: (1) Karen Kelly, Head Psychologist for Enhanced Outpatient Program ("EOP") at California State Prison ("CSP") Sacramento ("Kelly"); (2) Amy Eargle, Lead Supervisor of EOP, A-Yard, CSP Sacramento ("Eargle"); (3) Dr. Vasquez, Lead Supervisor of EOP, B-Yard, CSP Sacramento ("Vazquez"); (4) Troy Brimhall, Ex-Health Care Manager, CSP Sacramento ("Brimhall"); (5) J. Bal, Chief Medical Officer, CSP Sacramento ("Bal"); and (6) Dr. M. Jaffe, Chief Psychiatrist of EOP, CSP Sacramento ("Jaffe").  (Doc. 1.)[1]  In his complaint, Plaintiff alleges Defendants violated 42 U.S.C. § 1983, the Eighth Amendment of the Constitution, the Equal Protection Clause of the Fourteenth Amendment and the Americans with Disabilities Act (ADA)[2] by: (1) denying him access to his former doctor; (2) terminating

---

[1] The original complaint contained seven defendants, the seventh being Theresa Kamira-Yip, Manager, Sacramento office location unknown.  Defendants Kelly, Eargle, Vasquez, Brimhall, Bal, and Jaffe were all served and answered the complaint.  Defendant Kamira-Yip was never properly served.  Plaintiff sought to add two defendants - Nurses Shuburt and Curtis - but these defendants were never joined or served.  Thus, the only six defendants are: (1) Kelly; (2) Eargle; (3) Vasquez; (4) Brimhall; (5) Bal; and (6) Jaffe.

[2] Plaintiff makes only one reference to the ADA violation in his complaint, and alleges an Equal Protection violation only in his opposition to the pending motion based

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:07-CV-02236 AHM | Date | November 10, 2009 |
|---|---|---|---|
| Title | BRANDON RUIZ V. KAREN KELLY, *et al.* | | |

the "Childhood Trauma Therapy" psychiatric treatment program provided to him by his former doctor; and (3) conspiring to deny him constitutionally adequate mental health care.

On July 24, 2009, Defendants filed a motion for summary judgment on all of Plaintiff's claims ("Motion"). (Doc. 59.) On August 3, 2009, Plaintiff filed his opposition to Defendants' motion ("Opposition"). (Doc. 60.) On August 10, 2009, Defendants requested an 10 day extension, to and including August 20, 2009, to file a reply. (Doc. 61.) The Court granted Defendants' request (Doc. 63) and on August 20, 2009, Defendants filed their reply to Plaintiff's opposition ("Reply"). (Doc. 64.)

For the reasons set forth below, the Court GRANTS the motion.

## II.     FACTS

The following facts are based on allegations Plaintiff has made in his Complaint, Plaintiff's own medical and administrative records –which are not in dispute– and assertions made by Defendants in their Motion. Plaintiff has based his Opposition solely on his own medical records, and the declarations of fellow inmates Matthew Jennings (Opposition, Ex. B) and Nick Webb (Opposition, Ex. D). Plaintiff has provided no other evidence, including no declaration of his own. Thus, unless otherwise noted, the following facts are undisputed.

Plaintiff is an inmate currently in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). (Compl. ¶4.) Plaintiff was in the Enhanced Outpatient Program ("EOP") in the A-Facility at CSP Sacramento from 2006 to September 20, 2007. *Id.* He was transferred to Mule Creek State Prison ("MCSP") on September 21, 2007. *Id.* According to the "Revised Program Guide,"[3] EOP "provides

---

on another inmate's "declaration" that he received the kind of treatment Plaintiff seeks. Defendants did not address either claim in either their summary judgment motion or their reply to Plaintiff's opposition. They were not required to do so.

[3]The "Revised Program Guide" governs the policies and procedures for the provision of mental health care to inmates in the CDCR. In Coleman v. Wilson, 912 F.Supp.1282 (E.D. Cal. 1995), a federal class action suit for the provision of

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:07-CV-02236 AHM | Date | November 10, 2009 |
|---|---|---|---|
| Title | BRANDON RUIZ V. KAREN KELLY, *et al.* | | |

care to mentally disordered inmate-patients who would benefit from the structure of a therapeutic environment that is less restrictive than inpatient settings." *Coleman v. Schwarzenegger,* No. Civ. 90-0520 (E.D. Cal. 2006), Doc. No. 1753-2. Such therapy may include responses to symptoms that may be "managed as outpatient therapy with several psychotherapy sessions or medication adjustment with follow-up visits." *Id.*

     Plaintiff alleges that he has been diagnosed with Dissociation Identity Disorder and depression with psychotic features. *Id.* He alleges that he has been in the mental health system since the age of two. *Id.* From May 2006 through July 2006, Plaintiff alleges, he was under the care of Dr. J. Brown. *Id.* Plaintiff alleges that under Dr. Brown's care, he received "Childhood Trauma Therapy." *Id.* Plaintiff alleges that in July 2006, Defendants Eargle and Vasquez transferred Dr. Brown to another facility and stopped Plaintiff's "Childhood Trauma Therapy" treatment.[4] *Id.* Plaintiff alleges that after Dr. Brown was transferred, he no longer received "Childhood Trauma Therapy," and that Defendants Eargle and Vasquez have assigned him to 25 doctors in the past two

---

*constitutionally adequate mental health care for prisoners in the* CDCR, the court identified integral components of a constitutionally adequate mental health care system: sufficient and qualified mental health care staff, appropriate policies and procedures for mental health care, accurate record and data management, and sufficient licensed and unlicensed beds for mental health patients. *Id.* at 1298, fn. 10. On March 3, 2006, the *Coleman* court approved the Revised Program Guide as providing constitutionally adequate policies and procedures of mental health care and directed that it be implemented immediately. *Coleman v. Schwarzenegger,* No. Civ. 90-0520 (E.D. Cal. 2006), Doc. No. 1773. Under the Revised Program Guide, an inmate referred to and receiving EOP level of care is segregated from the General Population in separate yards, provided weekly contact with a primary clinician, medication management by a psychiatrist at least once every 30 days, and structured treatment activities ten hours a week. *Coleman,* Doc. No. 1753-2.

    [4]Defendants contend that Dr. Brown was transferred to the B-Facility at CSP-Sac to meet the rapid startup of the new EOP the CDCR decided to open there in order to reduce the statewide shortage of EOP beds. Defendants' Statement of Material Facts in Support of Motion for Summary Judgment ("DMF") ¶¶ 24-25; Declaration of A. Eargle in support of Defendants' Motion ("Eargle Declaration") ¶ 4; Declaration of M. Vazquez in support of Defendants' Motion ("Vazquez Declaration") ¶¶4-5. Plaintiff has not submitted any evidence to suggest that this fact is disputed.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:07-CV-02236 AHM | Date | November 10, 2009 |
|---|---|---|---|
| Title | BRANDON RUIZ V. KAREN KELLY, *et al.* | | |

years.[5]  *Id.*  He further alleges that after his "Childhood Trauma Therapy" was terminated, he informed Defendant Eargle that he was having blackouts, suicidal thoughts, and self-mutilation.  *Id.*  Plaintiff also alleges that Defendant Kelly told Dr. Brown she would be fired if she continued to communicate with Plaintiff.  *Id.*

Plaintiff contends that he had not seen a psychiatrist for the six month period between October 12, 2006 and April 25, 2006 [*sic*; the Court assumes Plaintiff meant to write "2007."] and for the three week period between April 24, 2007 and May 14, 2007. (Opposition at 2 and 37-39.)  In January 2007, Plaintiff submitted a 602 inmate appeal that reached Defendant Kelly, who supervised Defendants Eargle and Vasquez.[6] (Compl. ¶4.)  According to Plaintiff, after receiving the appeal, Defendant Kelly did nothing and told Defendant Eargle not to give in to Plaintiff.  *Id.*  Defendant Eargle submitted a First Level Response to Plaintiff's appeal SAC-H-07-01040 on June 5, 2007, stating that Dr. Brown was no longer with the EOP, but that when a new case manager was assigned there would be a meeting between Plaintiff, Defendant Eargle and the new case manager for the purpose of discussing a treatment plan. (Opposition at 52-57.)  Dr. Ewing was going to be assigned as Plaintiff's case manager.  *Id.* at 43, 47.   Plaintiff's medical records indicate that Plaintiff failed to appear for his appointment at the treatment center on June 7, 2007. (Declaration of William Brodbeck in Support of Defendants' Reply to Plaintiff's Opposition ("Brodbeck Declaration"), Ex. A at 2 (containing Plaintiff's medical records).)  They also state that on June 21, 2007, he failed to keep an appointment with Defendant Eargle.  *Id.* at 3.  Plaintiff alleges that even though Defendant Eargle knew Plaintiff had a conflict with Dr. Ewing,  Defendant Eargle assigned Dr. Ewing to be Plaintiff's case manager. (Compl. ¶ 4.)  Beginning on February 2, 2007, Plaintiff attended at least eleven sessions with Dr. Ewing. (Brodbeck Declaration Ex. A at 4-52 (containing Plaintiff's medical records).)  Plaintiff argues that when he learned that Dr. Ewing was to be his case manager, he objected by submitting a Reasonable Modification or Accommodation Request concerning Dr. Ewing's

---

[5] Plaintiff's medical records indicate that after Dr. Brown was transferred, Plaintiff was seen by a Dr. Macomber and a Dr. Ewing.  There is no evidence to suggest that Plaintiff has been seen by other doctors. (Opposition, Ex. A.)

[6] It is unclear what this particular appeal alleged. The First Level Response indicates that, in the appeal, Plaintiff requested to receive "proper treatment" he once received from Dr. Brown. (Opposition, Ex. H at 52.)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:07-CV-02236 AHM | Date | November 10, 2009 |
|---|---|---|---|
| Title | BRANDON RUIZ V. KAREN KELLY, *et al.* | | |

assignment on June 10, 2007. (Opposition at 47-48.)

Plaintiff alleges that in May 2007, Defendant Brimhall came to see Plaintiff about his appeal and Plaintiff informed him of his mental health problems. *Id.* According to Plaintiff, Defendant Brimhall took no action. *Id.*[7] Plaintiff alleges that in May 2007, Defendant Jaffe also received notice of Plaintiff's need for adequate medical care, but he, too, took no action. *Id.* Plaintiff alleges that in late 2006, he wrote to the Director of the California Department of Corrections and Defendant Kamira-Yip responded. *Id.* According to Plaintiff, Defendant Kamara-Yip conducted no further investigation. *Id.* Plaintiff alleges that on July 5, 2007, Defendant Bal, in response to Plaintiff's 602 appeal, stated that continuity of care is "not that big a deal." *Id.*

On October 19, 2007, Plaintiff filed a complaint against all Defendants, alleging that Defendants had violated 42 U.S.C. § 1983, that Defendants entered into a conspiracy to violate the Eighth Amendment of the Constitution, and that Defendants had violated the Equal Protection Clause of the Fourteenth Amendment and the ADA by denying him access to his former doctor and his "Childhood Trauma Therapy." (Doc. No. 1.) As a result of Dr. Brown's transfer and the termination of the "Childhood Trauma Therapy," Plaintiff alleges, he has suffered numerous mental breakdowns, including self-mutilation, suicidal thoughts, blackouts, and loss of sleep and appetite. *Id.* For relief, plaintiff seeks to have Defendants Kelly and Eargle removed from their positions and CSP Sacramento. He also seeks to be moved to the Mule Creek EOP to receive proper mental health care. *Id.* Plaintiff also seeks $20,000,000 for pain and suffering, mental and emotional distress, and psychological torture. *Id.*

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of

---

[7]Plaintiff has not provided any evidence or a declaration to substantiate the allegations set forth in this paragraph. As discussed, *infra*, Defendants argue that even accepting these facts as true, summary judgment is appropriate because Defendants are entitled to qualified immunity. (Motion at 10.)

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:07-CV-02236 AHM | Date | November 10, 2009 |
|---|---|---|---|
| Title | BRANDON RUIZ V. KAREN KELLY, *et al.* | | |

demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be entered against the opposing party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.*; *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:07-CV-02236 AHM | Date | November 10, 2009 |
|---|---|---|---|
| Title | BRANDON RUIZ V. KAREN KELLY, *et al.* | | |

If judgment as a matter of law is not appropriate on an entire issue, "the court should, to the extent practicable, determine what material facts are not genuinely at issue. ... It should then issue an order specifying what facts ... are not genuinely at issue. The facts so specified must be treated as established in the action." Fed. R. Civ. P. 56(d)(1). The Central District of California allows parties to make a direct motion for the court to issue an order setting forth undisputed facts pursuant to Rule 56(d)(1). L.R. 56-4.

## IV. DISCUSSION

### A. Eighth Amendment Claim (First Cause of Action)

Defendants request that the Court grant their motion for summary judgment because the facts in this case are indisputable and reveal that Plaintiff received constitutionally adequate mental health care. Defendants assert that because the Revised Program Guide does not require "Childhood Trauma Therapy," nor that a particular health care clinician deliver whatever care is required or appropriate, Plaintiff cannot establish that Defendants' failure to provide him with "Childhood Trauma Therapy" or to assign him a clinician of his choosing constitutes a violation of the Eighth Amendment. Defendants also contend that because there is no genuine issue of material fact as to both (a) Defendant Eargle's lack of knowledge regarding Plaintiff's conflict with Dr. Ewing when she assigned him to be Plaintiff's case manager and to (b) Plaintiff's own thwarting of the efforts of Defendants Kelly and Eargle to set up a treatment plan for him, Defendants did not violate Plaintiff's Eighth Amendment rights and summary judgment is appropriate.

The Eighth Amendment prohibits the unnecessary and wanton infliction of pain which constitutes cruel and unusual punishment. *Whitley v. Albers,* 475 U.S. 312, 319 (1986). In order to prove that he suffered cruel and unusual punishment, a prisoner must show that he objectively suffered a sufficiently serious deprivation, and that, subjectively, prison officials acted with "deliberate indifference" allowing or causing the deprivation to occur. *Wilson v. Seiter,* 501 U.S. 294, 298-99 (1991). In the context of providing medical care, deliberate indifference is demonstrated when a prison official knowingly disregards a serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, *WMX Technologies Inc., v. Miller,* 104 F.3d 1133 (9th Cir. 1997).

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:07-CV-02236 AHM | Date | November 10, 2009 |
|---|---|---|---|
| Title | BRANDON RUIZ V. KAREN KELLY, *et al.* | | |

The test for deliberate indifference has two parts. First, a plaintiff must show a "serious medical need" by demonstrating that failure to treat his condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006). Second a plaintiff must show that the defendant's response to the need was deliberately indifferent. *McGuckin,* 974 F.2d at 1059-60. This second prong of the test is satisfied when a plaintiff establishes, as to each defendant, (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Id.* Allegations of differences of opinion regarding treatment methods are insufficient to establish that a prison official acted with deliberate indifference and, therefore, do not rise to the level of a constitutional violation. *Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir. 1996).

With respect to EOP, the Revised Program Guide makes clear that "each inmate-patient will have an individualized treatment plan that provides for treatment consistent with the inmate-patient's needs." *Coleman v. Schwarzenegger,* Doc. No. 1753-5 at 7. The Revised Program Guide also makes clear that a clinician in EOP *may* offer a "family issues" treatment program, "depending on the needs of the inmate-patient population and the resources available."[8] *Id.* at 9-10 (emphasis added). However, "state prison authorities have wide discretion regarding the nature and extent of medical treatment." *Jones v. Johnson,* 781 F.2d 769, 771 (9th Cir. 1996). "A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution." *Roberts v. Spaulding,* 783 F.2d 867, 870 (9th Cir. 1986).

As Defendants correctly contend, the Revised Program Guide does not explicitly recognize "Childhood Trauma Therapy" as either a treatment modality for any DSM Axis 1 serious mental disorder, or as a medical necessity. *Id.* at 5; DMF ¶9. Furthermore, the Revised Program Guide does not require that a particular physician deliver any of the treatment programs for which its procedures and policies provide. *Id.*; DMF ¶10. Plaintiff's own medical records indicate that from 2006 to September 20, 2007, he always had an assigned case manager and was assigned all therapeutic activities

---

[8]The "Family Issues" treatment activity to which the Revised Program Guide refers focuses on "stressful experiences associated with spousal abuse, childhood physical and sexual abuse, separation from offspring and loved ones, dysfunctional relationships...etc." *Coleman,* Doc. 1753-5 at 10.

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:07-CV-02236 AHM | Date | November 10, 2009 |
|---|---|---|---|
| Title | BRANDON RUIZ V. KAREN KELLY, *et al.* | | |

required by the Revised Program Guide. (Opposition at 5-28.) Dr. Brown's notes contained in the CSP-Sacramento Quarterly Case Summary state that the interventions she used with Plaintiff were: "Psychoeducational, Progressive muscle relax., Multimodal, CBT, schema work, working on childhood trauma and PTSD...." *Id.* Her notes from the twelve sessions she had with Plaintiff from May 16, 2006 through July 14, 2006 indicate that she used a variety of forms of mental health treatment with Plaintiff, and only once did she use the phrase "process childhood trauma." *Id.* Thus, as Defendants correctly contend, the fact that Plaintiff did not get to choose his physician or a treatment method outside of the parameters of the Revised Program Guide does not approach the level of deliberate indifference necessary to establish that Defendants violated Plaintiff's Eighth Amendment rights.

Despite Plaintiff's contention that he had not seen a psychiatrist from either October 12, 2006 through April 25, 2007[9] or between April 4, 2007 and May 14, 2007, his medical records reveal that he had at least thirty nine appointments with a mental health clinician between October 2006 and April 2007 and an appointment with a mental health clinician on May 8, 2007. (Brodbeck Declaration, Ex. A at 4-52.)

Plaintiff contends that Defendant Eargle was deliberately indifferent in assigning Dr. Ewing to be Plaintiff's case manager because she knew that Plaintiff had a conflict with Dr. Ewing (Opposition at 40-50); however, beginning on February 2, 2007, Plaintiff attended at least eleven sessions with Dr. Ewing and did not submit a Reasonable Modification or Accommodation Request concerning Dr. Ewing's assignment until June 10, 2007. (Opposition at 47; Brodbeck Declaration, Ex. A at 10-17, 19-20, 24 and 26.) Despite Plaintiff's contention that Defendants Eargle and Kelly failed to come up with a treatment plan for him, after Defendant Eargle made clear to Plaintiff that she would meet with him to discuss his treatment plan, Plaintiff twice failed to attend this meeting. (Brodbeck Declaration, Ex. A at 2-3.) Thus, because the facts indisputably demonstrate that Defendant Eargle did not know of Plaintiff's conflict with Dr. Ewing when she assigned him to be Plaintiff's case manager and that Plaintiff himself thwarted the efforts of Defendants Kelly and Eargle to set up a treatment plan for him, Defendants' conduct did not sink to the level of deliberate indifference required to establish an Eighth Amendment violation.

---

[9]See text above for the Court's correction of Plaintiff's typographical error.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:07-CV-02236 AHM | Date | November 10, 2009 |
|---|---|---|---|
| Title | BRANDON RUIZ V. KAREN KELLY, *et al.* | | |

Therefore, because Defendants have demonstrated that there is no genuine issue of material fact that Plaintiff received constitutionally adequate mental health care under the Revised Program Guide, that Defendant Eargle did not know of Plaintiff's conflict with Dr. Ewing when she assigned him to be Plaintiff's case manager and that Plaintiff himself thwarted the efforts of Defendants Kelly and Eargle to set up a treatment plan, the Court GRANTS Defendants' motion for summary judgment on the first claim for relief.

### B. 42 U.S.C. § 1983 Claim (Second Cause of Action)

Defendants move for summary judgment on Plaintiff's 42 U.S.C. § 1983 claim on the grounds that all defendants are entitled to qualified immunity and that Plaintiff has alleged no facts to satisfy the linkage requirement necessary to state a Section 1983 violation against Defendants Kelly, Brimhall, Bal or Jaffe. Section 1983 provides, in pertinent part, that "(e)very person who, under color of any statute of any state . . .subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.

Turning first to the defense of qualified immunity, the Supreme Court has made clear that such a defense protects "government officials...from liability for civil damages insofar as their conduct does not violate established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1992). Until recently, whether a qualified immunity defense exists was said to require a two-part analysis. *Saucier v. Katz,* 553 U.S. 194, 201 (2001). First, a court must determine whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* If, however, a constitutional violation could be made out, the court must determine whether the right was clearly established. *Id.* In determining whether a right is clearly established, the court must determine whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. In the most recent Supreme Court term, however, the Court ruled that a court may choose to address the qualified immunity defense without first determining whether there was a constitutional violation.

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:07-CV-02236 AHM | Date | November 10, 2009 |
|---|---|---|---|
| Title | BRANDON RUIZ V. KAREN KELLY, *et al.* | | |

*Pearson v. Callahan,* ___ U.S. ___, 129 S.Ct. 808 (2009).

     As discussed, *supra*, the undisputed facts in this case reveal that none of the Defendants violated a clearly established constitutional right. Under the policies and procedures of the Revised Program Guide, Plaintiff was provided constitutionally adequate mental health care. Thus, because Defendants did not violate any of Plaintiff's constitutional rights, Defendants would be entitled to summary judgment on the Section 1983 claim.[10]

     Turning next to whether Plaintiff has alleged facts sufficient to satisfy the linkage requirement necessary to state a Section 1983 violation against Defendants Kelly, Brimhall, Bal or Jaffe, the Ninth Circuit articulated that a person "subjects" another to the deprivation of a constitutional right, within the meaning of Section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made. *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir. 1978). To establish a Section 1983 violation by personnel in supervisory roles, a plaintiff must prove that defendant either: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted). In *Hansen*, the Court granted the defendant's motion for summary judgment on Plaintiff's Section 1983 claims because the complaint contained merely a "vague allegation" that the defendant "was involved in a 'conspiracy to deprive [the plaintiff] of her [constitutional] rights'" and therefore failed to satisfy the linkage required to state a Section 1983 violation. *Id.* Here, as in *Hansen*, Plaintiff merely alleges that all defendants conspired to deprive him from receiving "Childhood Trauma Therapy" from Dr. Brown. That is deficient even as an allegation, and the

---

[10] Even if this court were to conclude that Defendants' conduct violated a constitutional right, a reasonable person in Defendants' position could have believed that such conduct was lawful. Defendants were following the policies and procedures set forth in the Revised Program Guide, which the *Coleman* court made clear provides the components of constitutionally adequate mental health care for inmates in the CDCR. Therefore, under the *Saucier* test, Defendants would be entitled to qualified immunity.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:07-CV-02236 AHM | Date | November 10, 2009 |
|---|---|---|---|
| Title | BRANDON RUIZ V. KAREN KELLY, *et al.* | | |

undisputed facts indicate that Plaintiff cannot satisfy the linkage requirement necessary to sustain a Section 1983 claim.

### V.     CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment on all of Plaintiff's claims.

No hearing is necessary.  Fed. R. Civ. P. 78; L. R. 7-15.

This Order is not intended for publication or placement in the databases of Westlaw or LEXIS.

_____ : _____
Initials of Preparer